## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| SOUTHERN PINE CREDIT UNION | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:22-CV-00052 (WLS) |
| | : | |
| SOUTHWEST MARINE AND | : | |
| GENERAL INSURANCE COMPANY, | : | |
| COACTION GLOBAL, INC., f/k/a | : | |
| PROSIGHT GLOBAL, INC., and | : | |
| PROSIGHT SPECIALTY | : | |
| INSURANCE INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court are Plaintiff's Motions to Compel and for Sanctions. (Docs. 44; 58; 90; 101; 114).

## RELEVANT PROCEDURAL HISTORY

Plaintiff Southern Pine Credit Union filed its Complaint (Doc. 1) against Defendants Southwest Marine and Coaction Global ("Defendants)," formerly known as "Prosight Global Inc. and Prosight Specialty Insurance" in June of 2022. The above-styled case includes a claim for breach of contract and a claim for bad faith following a denial of Plaintiff's bond claim. Subsequently, Plaintiff filed an Amended Complaint (Doc. 89), pursuant to the Court's Order (Doc. 88) that granted its unopposed motion to file an amended complaint. In the Amended Complaint (Doc. 89), Plaintiff alleges that it filed an Employee Dishonesty bond claim with Defendants after a long-term embezzlement scheme committed by the credit union's then-President and then-Controller were discovered. Plaintiff alleges that a special procedures audit was conducted at Southern Pine Credit Union, and the audit confirmed Plaintiff's embezzlement loss of $5,471,518.93. (Doc. 89). But Defendants denied Plaintiff's embezzlement proof of loss in its entirety, which led to Plaintiff initiating the instant lawsuit. (Doc. 89).

1

Relevant here, and pending before the Court, are Plaintiff's five (5) Motions to Compel and for Sanctions. (Docs. 44; 58; 90; 101; 114). Defendants filed Responses (Docs. 56; 70; 102; 115),[1] opposing Plaintiff's Motions.

In July of 2023, the Parties filed a Joint Motion for Discovery Confidentiality Order (Doc. 85), which the Court granted (Doc. 87), and it set out how Parties would handle, if any, the disclosure of confidential information. Despite the Discovery Confidentiality Order, however, the Parties continued to have discovery disputes.

The Court held a hearing on Plaintiff's five Motions in November of 2023. (Docs. 104; 113). Lead Counsel for both Parties attended the hearing and presented their arguments and related exhibits. (Doc. 125). At the hearing, Counsel for Defendants stated that a discovery matter as to Gregerson, Rosow, Johnson & Nilan ("GRJN") documents remained and that they will further review the GRJN communication to see if there are any additional GRJN documents that need to be produced to Plaintiff. (*Id.*) The Court instructed Defendants to inform the Court, in writing, no later than December 8, 2023, as to the finality of their production of the GRJN documents to Plaintiff. (*Id.*) The Court also informed both Parties that there shall be no further briefings or hearings regarding the Motions to Compel and stayed the discovery pending the Court's ruling on Plaintiff's pending Motions. (*Id.*)

Defendants timely filed a letter to the Court regarding the completion of their review of the GRJN documents. (Doc. 126). Subsequently, the Court entered an Order (Doc. 127), instructing Plaintiff to review and update its pending Motions to Compel as a result of Defendants' latest discovery production, if necessary and where relevant, by the end of January of 2024. (Doc. 127). Plaintiff filed a timely Response (Doc. 128) to the Court's Order, which discusses discovery issues that still remain and provides updates to some of its pending Motions. Now, Plaintiff requests the following (Doc. 128), which are briefly summarized below:

---

[1] According to the docket, Defendants did not file a response to Plaintiff's third Motion to Compel (Doc. 90).

- **First Motion to Compel (Doc. 44)**
  - Production of the claim file for every embezzlement/employee dishonesty claim equaling or exceeding $100,000 that was submitted to Defendants from 2013 to 2023, and where the embezzlement/employee dishonesty scheme/conduct lasted for one year or more;

  - Production of all claims handling and/or adjustment policies and procedures that existed before, during, and/or following the submission of Plaintiff's claim.

- **Second Motion to Compel (Doc. 58)**
  - Production of all documents that are being withheld and/or redacted to the Court for an *in camera* review so that the Court can determine whether or not Defendants have met their burden of proving that the information being withheld is properly privileged and, if so, whether those privileges have been waived;

  - After the *in camera* review, if Defendants failed to establish a *bona fide* privilege and/or which the privilege(s) have been waived, compel the Defendants to produce those materials to Plaintiff.

- **Third Motion to Compel (Doc. 90)**
  - Production of "Number 19" from Plaintiff's Request for Production, which seeks production of "all minutes of the meetings of the Board of Directors between January 1, 2018, and December 31, 2021" that have not been produced to Plaintiff in unredacted form.

- **Fourth [Emergency] Motion to Compel and for Sanctions (Doc. 101)**
  - Production of all documents/information that Defendants have withheld (in whole or in part) from their "Claims Files" and/or similar files that are related to Plaintiff's claims in unredacted form;

  - Prohibit Defendants at trial from producing (directly/indirectly) any and all testimony, documentary evidence, and/or other evidence that relies in whole or in part on any "qualitative" and/or "quantitative" underwriting assessment metrics and the like because Defendants failed/refused to produce any such information to Plaintiff;

  - Sanction Defendants to reimburse Plaintiff's out-of-pocket costs and expenses necessitated by Defendants' misconduct; pay regular hourly rates of and for Plaintiff's expert witnesses (Stegall and Triechel) for reviewing Defendants' recently produced 3,500-page Claim File and the GRJN files and for making revisions to their expert reports; pay for the expedited transcript order fees for Ms. Edwards's and Ms. Studler's deposition transcripts; pay attorney's fees that were incurred in drafting and filing the instant Fourth Emergency Motion

to Compel and for Sanctions; pay attorney fees incurred in Plaintiff drafting and filing its first three (3) Motions to Compel.

- **Fifth Motion to Compel and for Sanctions (Doc. 114)**
  - o Pay attorney's fees and costs for drafting Motions to Compel and related pleadings and cover costs for the time Plaintiff invested to prepare for and participate in the Parties' various meet and confer conferences;
  - o Authorize Plaintiff to take the depositions of the attorneys and/or others at GRJN who participated in the investigation of Plaintiff's claim;

  - o Require Defendants to produce all of the GRJN files/communications related to Plaintiff's claim in their entirety (but not including Defendants' final decision as to Plaintiff's claim);

  - o Authorize Plaintiff to take the depositions of Defendants' Underwriters (Tammy Behnke and Matthew Santolla) as to the policies that were issued by Defendants to Plaintiff;

  - o Authorize Plaintiff to re-take the depositions of Ms. Studler, Ms. Edwards, Mr. Vidone, and Mr. Bednarik and have Defendants cover the costs in relation to the re-taking of their depositions.

Defendants filed their Responses in Opposition to the First Motion to Compel (Doc. 56), Second Motion to Compel (Doc. 70), Fourth Motion to Compel (Doc. 102), and the Fifth Motion to Compel (Doc. 115). Defendants did not file a response to Plaintiff's Third Motion to Compel.

## I.   COMPLIANCE WITH THE DISCOVERY ORDER GOOD FAITH ATTEMPT TO CONFER

Before filing a motion to compel, the movant must have in good faith conferred or attempted to confer with the opposing party to obtain discovery without court action. Fed. R. Civ. P. 37(a)(1); M.D. Ga. L.R. 37. There is no bright-line rule applicable in this Court regarding to what extent a movant must attempt to confer before filing a motion to compel. *See Jackson v. Deen*, No. CV412-139, 2012 WL 7198434, at *1 (S.D. Ga. Dec. 3, 2012) ("Neither face-to-face nor telephone contact is necessarily essential to the 'good faith' certification requirement in every case. Sometimes letters, emails, or faxes will suffice.")

Here, there is no dispute regarding Plaintiff's good faith effort to obtain the requested information without the Court's involvement as to its First, Second, and Third Motions to

4

Compel. However, Defendants contend that Plaintiff did not include a good faith certification for the last two (2) Motions to Compel (Doc. 102, at 2); Doc. 115 at 7–8). At the November 2023 hearing, Plaintiff explained that it filed Emergency Motions to Compel because factual discovery was set to end in a few days and depositions of Defendants' outside Claims Investigator was set to take place only three (3) days before the close of discovery; thus, Plaintiff says it filed the Emergency Motions because it opined that an accelerated  intervention of the Court was necessary.

Upon review and consideration of the Parties' arguments, the Court shall not deny the Fourth Emergency Motion to Compel and for Sanctions (Doc. 101) and the Fifth Supplemental Motion to Compel (Doc. 114) and for Sanctions, notwithstanding Defendants' objections for lack of certification regarding the two Motions. First, Plaintiff attached correspondence between Counsel and included representations about its attempt to communicate with Defense Counsel regarding discovery issues. Upon review of Plaintiff's Motions to Compel and respective responsive briefs by Defendants, it is clear to the Court that Plaintiff had repeated difficulty and frustration in obtaining discovery from Defendants. The Court also notes that there appears to be some attempt by Plaintiff to confer with Defendants before Plaintiff filed the last two Motions to Compel. (Docs. 101-1; 101-2; 101-3; 114-2); *see also Marnocha v. City of Elkhart*, No. 3:16-CV-592-PPS-JEM, 2018 WL 11489203, at *2 (N.D. Ind. Oct. 4, 2018) (declining to deny the motion for failure to include a good faith certification where "there was at least some attempt to confer prior to the filing the instant Motions").  Although it is preferable for the Parties to make additional efforts to confer, under these particular circumstances, the Court cannot find that Plaintiff failed to attempt to confer in good faith.  Additionally, the latter motions relate to many matters raised in the prior motions, which included good faith certifications. As such, the Court shall not deny those two motions for failure to include a good faith certification.

## II.    **PLAINTIFF'S MOTIONS TO COMPEL**

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of

the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). A party may "move for an order compelling an answer, designation, production, or inspection" if another party has failed to produce documents or answer an interrogatory. Fed. R. Civ. P. 37(a)(3)(B).

Whether to grant a motion to compel is a matter of a district court's "broad discretion." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1306–07 (11th Cir. 2011) (internal citation omitted). For good cause, a court may order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). This rule is broadly construed with doubts resolved in favor of open discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Generally, discovery rulings will not be overturned "unless it is shown that they resulted in 'substantial harm' to the appellant's case." *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (citation omitted).

A. **General Summary of Court's Review of Plaintiff's Five Motions to Compel, Defendants' Four Responses, and the Parties' Arguments at the November 2023 Hearing**

The Court addresses each of Plaintiff's five (5) Motions to Compel in detail below. But the Court finds it necessary to provide its findings and conclusions regarding all of Plaintiff's Motions to Compel after having reviewed them in light of Defendants' Responses in Oppositions (Docs. 56; 70; 102; 115), as well as both Parties' arguments presented to the Court at the November 2023 hearing.

To begin, the Court finds the information and discovery requested by Plaintiff in all five Motions to Compel are discoverable and reasonable, albeit the scope of some of the requests has been limited, which is discussed further below. In this case, Plaintiff seeks information it believes is relevant to its breach of contract and bad faith claims. Defendants contend that such information sought by Plaintiff is not relevant to Plaintiff's claims of bad faith or breach of contract and/or is confidential and privileged. The Court disagrees with

Defendants. First, the Court granted and entered an Order of confidentiality (Doc. 87) that protects any confidential information that may be disclosed, if any, during discovery. Assuming arguendo that some information turns out to be not relevant, that alone does not mean that such information is not discoverable. Fed. R. Civ. P. 26(b)(1). Moreover, even if information is relevant, a court may nevertheless limit discovery if the information turns out to be "unreasonably cumulative or duplicative." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1205 (11th Cir. 2003) (explaining that discovery is not limitless and that a court may limit discovery of relevant material if it determines that such information is not relevant or is overly burdensome to the responding party). Additionally, assessment of bad faith claims in refusal to pay insurance requires courts to determine whether the insurer had reasonable and probable cause for its refusal to pay the claim, which are, of course, determined by facts, circumstances, and knowledge held by the insurer at the time of refusal. *Moon v. Mercury Ins. Co. of Ga.*, 559 S.E.2d 532, 535 (Ga. Ct. App. 2022). Thus, the Court ultimately finds the information sought by Plaintiff in all of its five (5) Motions to Compel are discoverable and relevant for its claims of bad faith and breach of contract. With that said, the Court shall address each of Plaintiff's Five (5) Motions to Compel.

   **B. Plaintiff's First Motion to Compel (Doc. 44) is GRANTED**

In its first Motion to Compel (Doc. 44), Plaintiff argues that Defendants provided boilerplate, general objections to its requests for production and interrogatories. (Doc. 44). On the other hand, Defendants argue that they produced "responsive, non-privileged documents" and that their responses are not "disapproved of" by this Court. (Doc. 56, at 6).

Plaintiff argues that the "vast majority of the 25,000 pages" produced by Defendants have been already produced before, mostly by Plaintiff itself. (Doc. 57). Plaintiff contends that most of the 25,000 pages of documents are composed of either "unrelated, duplicative, blank, and/or non-fidelity bond related products," and so about 1,800 are "new" documents; however, Plaintiff contends that majority of those "new" documents were created before Plaintiff's bond claim investigation and are non-responsive to Plaintiff's discovery requests. (*Id.* at 2). Plaintiff also attached its email correspondence with Defendants, describing that at least 23,500 pages of the 25,000 pages constitute documents that were either already produced in initial disclosures, which consisted of Plaintiff's pre-suit

submission to Defendants for its bond claim, or duplicates of Defendants' supplemental production. (*Id.* at 3). Furthermore, Plaintiff contends that Defendants' objections are improper because it "feigns confusion" to the "straightforward" phrase "fidelity bond coverage policy sold and/or issued in Georgia" as Defendants responded that Plaintiff's request is "ambiguous as it seeks information about a fidelity bond coverage policy without any additional description." (*Id.* at 5). Plaintiff also argues that Defendants have improperly redacted and withheld discoverable documents, asserting attorney-client privilege. (*Id.* at 6).

General objections, in and of themselves, are not explicitly prohibited by the Federal Rules; however, neither are they encouraged. *See, e.g.*, Fed. R. Civ. P. 34(a)(2)(B) (specificity required when objecting to requests for production of documents). A general objection may also be a subject of sanction where it is interposed to shield a large volume of discoverable material from production based on a small portion of that material that is protectable. *E.g.*, *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139 (3d Cir. 2009).

Moreover, Rule 26 allows parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Here, Plaintiff seeks Defendants' other multi-year embezzlement/employee dishonesty claims between 2013 to 2023, and Defendants' internal policies and/or procedures related to claims investigations and/or employee dishonesty claims, which are documents related to the presentation of the Plaintiff's insurance claim and materials produced in related or similar litigations involving conduct that give rise to insurance claims like Plaintiff's claim. Ultimately, the Court finds Plaintiff's requests are reasonable, relevant, and proportional to the needs of the case, given that they are self-evidently relevant to Plaintiff to prove its claims and Defendants' consideration thereof. These are also related, in kind, to the claims of employee dishonesty that form the basis of Plaintiff's claim in this case. Whether they are admissible as evidence at trial is not the issue here, and the Court finds the documents requested by Plaintiff are discoverable under Rule 26. Fed. R. Civ. P. 26. Accordingly, Defendant shall produce to Plaintiff their embezzlement/employee dishonesty claims that exceeds $100,000 and were submitted to Defendants between January 1, 2013, to December 31, 2023, and where the embezzlement/employee dishonesty scheme or conduct lasted for a year or more. In addition, Defendant shall also produce their claims-handling and/or

adjustment policies/procedures for the period between January 1, 2013, to December 31, 2023. Defendants are **ORDERED** to make these productions to Plaintiff within **twenty-one (21) days** of entry of this Order.

### C. Plaintiff's Second Motion to Compel (Doc. 58) is GRANTED

Plaintiff contends that Defendants assert attorney-client and work product doctrine privilege to withhold and/or redact documents in Defendants' Privilege Log, including the GRJN documents. (Doc. 58). As background, Defendants provided its Privilege Log to Plaintiff in February of 2023; however, upon review, Plaintiff opines that Defendants are withholding and/or redacting numerous insurance claims under "specious assertions of attorney-client privilege and/or attorney work product." (*Id.* at 1). Specifically, Plaintiff contends that its review of the Privilege Log shows that the firm, GRJN, performed ordinary insurer business activities for Defendants. (Doc. 58, at 2). Yet, when Plaintiff requested the GRJN documents from Defendants, Defendants told Plaintiff that GRJN is an "outside counsel" that performed both legal work and claims handling business activities and that they withheld documents where GRJN was engaged in legal services. (*Id.* at 3). Plaintiff contends that Defendants failed to meet their burden of proving that the attorney-client privilege and work product doctrine apply to those documents. (*Id.* at 4).

Defendants argue that they did not intentionally withhold documents and that the Privilege Log primarily includes communication between GRJN and Defendants regarding legal services. ((Doc. 70, at 3, 5). Defendants also contend that GRJN's role is to serve as outside counsel for Defendants on Plaintiff's claim and that GRJN communications are protected by the attorney-client privilege because they are made for the purposes of/related to rendering legal services as well as protected by the work product doctrine because the documents were prepared in anticipation of litigation.  (*Id.* at 6–14).

In its Reply (Doc. 77), Plaintiff highlights the difficulty it had in dealing with Defense Counsel. For instance, Plaintiff argues that Defendants initially claimed that GRJN files were privileged but subsequently produced some after Plaintiff's "multiple requests." (Doc. 77, at 2).  Plaintiff also contends that Defendants refused to supplement their Privilege Log once Plaintiff identified the deficiencies therein. (*Id.*) Plaintiff also notes that Defendants "fallaciously" represent to the Court that Plaintiff has the burden of proof as to Defendants'

claim of privilege. (*Id.* at 3) (citing to Defendants' Response, Doc. 70, at 11) ("[Plaintiff] has failed to show that the documents on Defendants' privilege log are not privileged. . . .") Plaintiff further argues that Defendants reliance on the "conclusory Declaration of Marc Vidone [Defendants' Claims Manager]" fails to adequately support Defendants' privilege claims because it only shows that GRJN served as outside counsel only for Defendant Southwest Marine's investigation, does not identify Mr. Vidone's actual employer, and fails to establish the necessary facts to demonstrate that privilege applies to each document or communication sought by Plaintiff. (*Id.* at 3–12). Now, in its most recent Response (Doc. 128), the Plaintiff requests the Court to conduct an *in camera* review to determine whether or not Defendants have met their burden of proving that the information being withheld is properly privileged materials and that any privilege has not been waived.

As Plaintiff correctly argues, the party <u>invoking</u> a discovery privilege bears the burden of proving the privilege exists. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991) (emphasis added). If a party withholds otherwise discoverable information by asserting a privilege, said party must assert the claim expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The standard for determining the adequacy of a privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. *W. Wyvern Cap. Invs., LLC v. Bank of Am. N.A.*, No. 8:22-CV-191-WFJ-SPF, 2023 WL 3751995, at *1 (M.D. Fla. May 3, 2023) (internal citation omitted). Plaintiff contends that Defendants failed to establish that GRJN provided legal advice in its Privilege Logs. (Doc. 77, at 5).

Here, upon review, the Court finds that the Privilege Logs contain vague, conclusory descriptions, such as, "email containing legal advice of counsel regarding requests for documents and information from Southern Pine" or "letter containing legal advice and legal opinion of counsel regarding supplemental coverage opinion concerning Southern Pine's claim" that make it difficult to determine whether privilege(s) properly apply to those documents. (Docs. 58-1; 119-3; 128-2). At the November 2023 hearing, Plaintiff argued that

the redacted billing records indicate that GRJN was involved in Plaintiff's claim investigation and its role was not restricted to providing legal advice but has also been involved as Defendants' investigator of Plaintiff's claim. Also at the hearing, Defendants stated that they initially withheld GRJN materials because it involved legal services, but that Defendants later produced some GRJN files to Plaintiff, after their meet and confers, because Defendants eventually determined that they could separate certain documents and advice from privileged ones. Defendants also noted that the issue of whether a lawyer is providing legal service or investigative service is "complex." Thereafter, Defendants volunteered to assess the GRJN communications again after the hearing.

Upon review of the Privilege Logs (Docs. 58-1; 119-3; 128-2) and emails exchanged between Counsel raises, the Court finds that, at minimum, a genuine question exists as to whether the attorney-client privilege and/or work product doctrine are being properly asserted and applied to the withheld and/or redacted documents and communications. Thus, the Court shall conduct an *in camera* review of the withheld and/or redacted documents, as requested by Plaintiff. (Doc. 128, at 5). Therefore, Plaintiff's request (Doc. 128, at 5) for *in camera* review is **GRANTED**. Accordingly, Defendants are **ORDERED** to produce all documents (bates stamped/numbered) that were withheld or redacted, in their unredacted form, along with Defendants' brief that provides concise explanation of their objection to production to each said document, to the Court for an *in camera* review so that the Court can determine whether they met their burden of proving privilege(s) with respect to those document. Defendants have **twenty-one (21) days** after entry of this Order to provide those withheld/redacted documents to the Court. Following the *in camera* review by this Court, if the Court finds that Defendants have failed to establish a *bona fide* privilege or finds that privilege(s) have been waived as to any document or documents, the Court shall enter a separate Order, instructing Defendants to produce those documents to Plaintiff by certain deadline.

### D. **Plaintiff's Third Motion to Compel (Doc. 90) Is GRANTED**

As background, the Court previously granted (Doc. 60) Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 61) in March of 2023. The Amended Complaint (Doc. 61) includes an additional claim for relief and adds Defendants Coaction Management

and Coaction Insurance as Parties. Thereafter, Plaintiff served the newly added Defendants Coaction Management and Coaction Insurance separately with requests for production of documents, interrogatories, and requests for admission.[2]

Here, the third Motion to Compel (Doc. 90) concerns the newly-added Defendants, Coaction Management and Coaction Insurance, and their alleged refusal to provide requested information regarding the employee dishonesty claims. Plaintiff argues that the Defendants Coaction Management and Coaction Insurance did not produce any documentation other than a Service Agreement, which had already been previously disclosed. (Doc. 90, at 3). Plaintiff argues that it emailed Defense Counsel about this issue and emphasized that this was the third time that Defendants avoided producing relevant, non-privileged documents. (*Id.* at 4). Eventually, the Parties participated in several conferences[3] regarding the issue, and they also filed two (2) motions for enlargement of time to file motion to compel so that they can try to work out the disputes without the Court's intervention. (*Id.* at 5). Then, on July 26, 2024, the Parties met for the fifth time to discuss the inadequacies on the Defendants' part. (*Id.* at 6). Among other requests, Plaintiff sought production of all minutes of the board meetings between January 1, 2018, and December 31, 2021, because the lawsuit involves a joint and several liability action against all Defendants, and thus, Plaintiff finds that board minutes are necessary to identify the company names, attendees, and dates of the meetings. (Doc. 90, at 10). However, Plaintiff contends that Defendants redacted "certain company names" even though Plaintiff had informed Defendants that company names are relevant to its joint and several liability action in order to show interrelationship, common ownership, or common management/control, if any, by the Defendants. (*Id.*)

The docket shows that Defendants sought an extension of time to file a response from the Clerk pursuant to Local Rule 6.2, which was granted. (Doc. 94). But the docket shows that no responsive brief was actually filed by Defendants as to the third Motion to Compel (Doc. 90).

---

[2] All Defendants in this case are represented by the same Counsel.

[3] Plaintiff states that they had five conferences that were held on June 27, 2023, June 28, 2023, July 5, 2023, July 7, 2023, and July 21, 2023. (Doc. 90, at 4–6).

At the November 2023 hearing, Plaintiff argued that Defendants have only produced three (3) board minutes, but after conducting some depositions, Plaintiff realized that the corporations had the same board members and had one board meeting for all companies, which Plaintiff contends is important information to establish joint and several liability action. And in Plaintiff's most recent/updated Response (Doc. 128) to the Court Order (Doc. 127), Plaintiff argues that it still needs and requests production of Defendants' unredacted board minutes between January 1, 2018 and December 31, 2021, which have not yet been produced to Plaintiff. (Doc. 128, at 7). Plaintiff contends that "it is now clear" that based on the "limited information" that had been produced thus far, all four Defendant entities share identical board members and conduct simultaneous board meetings. (*Id.* at 6).

Upon review, the Court finds that Defendants have not properly asserted any basis for withholding or redacting the board minutes. Plaintiff has made it clear that it needs the board minutes to identify the company names, attendees, and dates of the meetings for its joint and several liability actions against all Defendants. Thus, Plaintiff's third Motion to Compel (Docs. 90; 128, at 6–7) is **GRANTED.** Accordingly, Defendants Southwest Marine, Coaction Global, Coaction Management, and Coaction Insurance are **ORDERED** to produce the complete set of unredacted board minutes for Board meetings that occurred between January 1, 2018, to December 31, 2021, which have not yet been produced to Plaintiff. To the extent that Defendants may have any confidentiality concern, the Court reminds and assures Defendants that both Parties are bound to and protected by the Discovery Confidentiality Order[4] (Doc. 87)—entered before Plaintiff filed its third Motion to Compel (Doc. 90)—which permits disclosure of confidential material or contents of confidential material under specific conditions during discovery. If no additional meeting was held, an authorized member of each respective Board shall affirmatively so state, in writing certifying the completeness and truthfulness of the statement, and be submitted to the Court and Plaintiff as its response.

---

[4] At the November 2023 hearing, Plaintiff stated that they agreed to enter into the protective/Discovery Confidential Order (Doc. 87) so that Defendants can be more agreeable to producing discovery materials that are relevant to Plaintiff's claims.

**E. Plaintiff's Fourth Emergency Motion to Compel (Doc. 101) Is GRANTED-in-PART and DENIED-in-PART**

On September 5, 2023, Plaintiff filed the fourth Emergency Motion to Compel (Doc. 101), arguing that despite Defendants' "repeated[] and unequivocal[] assur[ance]" that they had already produced their entire Claim File to Plaintiff, (Doc. 101, at 2), Plaintiff asserts that when it deposed Mr. Vidone—Defendants' Claims Manager—in late-August of 2023, Mr. Vidone testified that the <u>actual</u> Claim File in this case had not been produced because no one within Defendants' companies requested it from him. (*Id.* at 3). Plaintiff highlights that both Parties have known and have been aware of the significance of the Claim File to Plaintiff's case and that said Claim File was something that Plaintiff said it should have reviewed before conducting depositions. (*Id.* at 6). Plaintiff argues that it has requested the Claim File since the beginning of discovery, but that Defendants have engaged in a pattern of misrepresentations and "calculated misconduct" to obtain "unfair advantage" by withholding information damaging to Defendants, frustrating Plaintiff's efforts to obtain appropriate discovery, and causing Plaintiff to unnecessarily spend its limited resources. (*Id.* at 9); (Doc. 44-3); (Doc. 44-4).

Furthermore, about a month before the end of fact discovery, Plaintiff contends that Defendants produced a "file" from their outside Claims Investigator, Dee Studler, who investigated Plaintiff's pre-litigation employee dishonesty bond claim and its proof of loss. (Doc. 101, at 10). The majority of the file was "nothing more than a return to Plaintiff of the various documents" that Plaintiff had already provided to Defendants. (*Id.*) Plaintiff also explains that Defendants' lead attorney apologized and promised to "try" to produce Defendants' actual Claim File to Plaintiff by August 28, 2023, ahead of the then-scheduled depositions of Ms. Edwards in Milwaukee and Ms. Studler in Chicago, on September 7 and September 7, respectively. (*Id.* at 5). But Defendants did not produce the Claim File on August 28, as promised. (*Id.*) Plaintiff also argues that the depositions of Mr. Vidone, which took place on August 24 and August 25, occurred without Plaintiff's review of those withheld documents. (*Id.*) Plaintiff contends that Defendants did not produce the Claim File on August 28th, and instead, later informed Plaintiff that the missing production consisted of "thousands of pages," with more than 170 pages redacted and without a privilege log. (*Id.*

at 5, 7). Defendants produced a zip drive to Plaintiff, which consists of more than 3,500 pages, with more than 145 pages heavily redacted and a .bin file that cannot be opened. (*Id.* at 6). When Plaintiff wrote to Defense Counsel and asked that they identify the documents that had not been previously produced by bates number and identify documents that are duplicative of past production, Defendant replied that they "will not be identifying the number of documents not previously produced in this litigation." (*Id.*) (Doc. 101-1). Plaintiff contends that the instant lawsuit alleges claims for breach of contract and bad faith, and thus, assessing Defendants' insurance Claim File is necessary; however, Plaintiff further argues that Defendants "intentionally" did not provide their entire Claim File as part of their initial disclosure and sought to mislead Plaintiff through "a carefully worded misdirection" and did not inform Plaintiff that they were "improperly withholding" most of the Claim File. (Doc. 101, at 8)

On the other hand, Defendants argue that Plaintiff's assertion of Defendants' misconduct is incorrect because Defendants contend that Mr. Vidone testified that he did not remember if he was asked to provide Counsel with the Claim File. (Doc. 102, at 2). Defendants also argue that Plaintiff's assertion that the Claim File was "never produced in this litigation" is untrue. (*Id.*) Defendants also state that when they told Plaintiff the entire Claim File had been produced, Defendants were "not aware" that "notes" and "documents" of the Claim File were maintained separately from each other. (*Id.* at 3). Defendants also contend that they redacted and withheld certain information in the Claim File because they were deemed privileged. (*Id.* at 3–4). Additionally, Defendants argue that sanctions requested by Plaintiff are not warranted and argue that the counsel who previously took the lead discovery review unexpectedly took a leave of absence; therefore, Defendants explain that a new Counsel has been working "diligently" to respond to Plaintiff's questions about discovery. (*Id.* at 4–5). Defendants further contend that the "outcome of the case" does not turn on the information within Defendants' claim notes. (*Id.* at 5).

In its Reply (Doc. 103), Plaintiff contends that Defendants do not dispute the importance of the entire Claim File, that Defendants should have produced their Claim File more than a year ago with their initial disclosures, and that the reason why Mr. Vidone testified that the Claim File had never been produced to Plaintiff was because he had no

recollection of having been asked for it. (Doc. 103, at 1–2). As to Defendants' argument about new Counsel stepping in to handle discovery, Plaintiff argues that the Federal Rules of Civil Procedure and the Court's Orders do not "merely fall on the shoulders of one lone associate" and that these obligations belong to all Defendants and the rest of their attorneys. (*Id.* at 2). Plaintiff also argues that it sought discovery of other Employee Dishonesty/Embezzlement claims that have been made against Defendants because this lawsuit involves a bad faith breach of contract claim. (*Id.* at 5). Despite the Confidentiality/Protective Order, which was sought initially because Defendants voiced concerns about confidential/privileged matters, Plaintiff contends that Defendants continuously asserted that they still cannot provide information on claims to Plaintiff. Instead, Plaintiff contends Defendants produced a chart that identifies about 2,300 claims of various kinds, which are not only limited to Employee Dishonesty/Embezzlement Claims, since 2013. (*Id.*) Thus, Plaintiff argues that it had to go through all those claims in the chart and found 133 claims coded as employee dishonesty. (*Id.* at 6). When Plaintiff asked for those claims, Defendants told Plaintiff again that they cannot, without excessively wasteful efforts, identify which claims were employee dishonesty/embezzlement claims. (*Id.*) Plaintiff also argues that Defendants continuously refused or failed to provide privilege logs for the documents that they withheld, even though Defendants gave Plaintiff three (3) separate assurances that they would produce privilege log.

In its updated Response (Doc. 128 at 7–8), Plaintiff requests the following: compel Defendants to produce any and all documents and/or information that Defendants have withheld (in whole or in part) from their Claim File(s) and/or similar files that are related to Plaintiff's claim in unredacted form; sanction Defendants to pay the regular hourly rates of and for Plaintiff's Expert Witnesses Stegall and Triechel for their review of Defendants' recently-produced 3,500-page Claim File and the GRJN file, and for their revision of the expert reports; payment of the expedited transcript order fees for Ms. Edwards's and Ms. Studler's deposition transcripts; payment of the reasonable and necessary attorney's fees incurred in drafting and filing the instant Emergency Motion to Compel (Doc. 104) as well as the prior Motions to Compel (Docs. 44; 58; 90). These requests for production of unredacted documents and for sanctioning of Defendants are **GRANTED-in-PART**.

Upon review of the Motions to Compel and relevant records, the Court finds sanctioning Defendants in this matter is appropriate. Under its inherent power, a district court may impose sanctions for litigation misconduct. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal citation omitted). The district court possesses the "inherent power to police its docket." *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989). "Incident to this power, the judge may impose formal sanctions upon dilatory litigants." *Id.* "The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice." *Id.*

Federal Rule of Civil Procedure 37 governs sanctions for discovery-related misconduct. Fed. R. Civ. P. 37. The key to unlocking a court's inherent power to sanction is a finding of bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (internal citation omitted). In the Eleventh Circuit, courts use the "subjective bad faith standard" when assessing whether a party should be sanctioned. *Purchasing Power, LLC. v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). In other words, "there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subject bad faith." *Id.* (internal citation omitted) (quotation marks omitted). In the Eleventh Circuit, a party may demonstrate bad faith by "delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes*, 158 F.3d at 1214 (internal citation omitted). Moreover, a district court has the inherent power to "award attorney's fees to a party whose litigation efforts directly benefit others, to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). A district court must "clearly state its reasons" for imposing a sanction so that meaningful review may be had on appeal. *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (citation omitted). "Permissible" purposes of a sanction include—but are not limited to—compensating the other party for the added expense caused by the discovery-related misconduct and compelling discovery. *Id.*

Here, the Court finds that Defendants' failure to produce and to improperly withhold/redact documents justify the issuance of sanctions. First, the Court finds Defendants' continuous misconduct as to Plaintiff's discovery requests establishes bad faith,

17

as they have been evasive about Plaintiff's requests for relevant documents and discovery materials, without having met their burden of producing evidence to substantiate the legitimacy of their redactions or withholding of the requested discovery documents as well as the related resulting delays. Plaintiff has been suffering, and still suffers, from the frustrating situation caused by Defendants.

Second, the Court granted the Joint Discovery and Confidentiality Order, which Parties requested to protect and cover any and all confidential documents that may be shared during discovery and restricting the uses of those documents for this litigation only. Yet, Defendants still assert vague claims of alleged privilege, which essentially seem to moot the Protective Order. This lawsuit involves a claim of bad faith following a denial of insurance coverage. Thus, the Court finds Plaintiff's requests for claim files and information that are similar to its own situation and production of claim files for multi-year embezzlement/employee dishonesty claim equaling or exceeding $100,000, which were submitted to Defendants from 2013 to 2023, and requests for the GRJN files to be reasonable and appropriate. Yet, Defendants argue that they have misunderstood Plaintiff's requests or that they were confused about the Claim File (Doc. 102)—but the Court finds these reasons by Defendants to be unpersuasive. Unless this is Defendants' first lawsuit involving bad faith claim following a denial of insurance coverage, the Court finds it difficult to find their excuse of confusion or misunderstanding uncompelling. Based on review of relevant briefs and exhibits, it does not appear that Southern Pine's litigation is Defendants' first lawsuit regarding this particular issue. Therefore, it is puzzling as to why and how Defendants were confused as to what must be produced to Plaintiff. Even if Claim File and Claim Notes are different types of files as Defendants contend, if Defense Counsel provided sufficient explanation regarding the type of information that they were looking for or understood to produce to Plaintiff, then Defendants' employees may have or could have provided both Claim File and Claim Notes for production, out of caution.

It appears to the Court that Defendants have engaged in a pattern of misrepresentation to avoid providing relevant discovery to Plaintiff. Plaintiff contends, and Defendants also stated in their Responses, that Defendants told Plaintiff that they have already produced all materials as well as their entire Claim File, requested by Plaintiff. But

Plaintiff contends that Defendants are still withholding information that may be damaging to Defendants, are frustrating Plaintiff's efforts to obtain appropriate discovery, and are causing Plaintiff to expend its limited resources. (Doc. 101, at 3, 15). Yet, Plaintiff emphasizes that when it deposed Mr. Vidone on August 24, 2023, Plaintiff discovered then that no one within Defendants' companies asked for the Claim File from him. (*Id.* at 3). And when Defendants' lead Counsel apologized and promised to "try" to produce the actual Claim File to Plaintiff, Plaintiff contends that Defendants instead only produced "thousands of pages" that were redacted, without a privilege log. (*Id.* at 5–6). Moreover, Plaintiff contends that Defendants' production of a zip drive on September 1, 2023, was about 3,500 pages, with more than 145 pages "heavily redacted," along with a bin file that cannot be opened. (*Id.* at 6). Thus, when Plaintiff asked Defendants to identify which documents had been previously produced by bates number and which documents are duplicative of past production, Defendants only responded that they will not be making those identifications. (*Id.*) Ultimately, the Court finds that Defendants have failed to respond or have not responded appropriately or properly to Plaintiff's request for discovery. In conclusion, the Court finds these are indications of Defendants' bad faith, misrepresentation, and manipulation to avoid providing relevant documents to Plaintiff. The above-styled case commenced in 2022. Although it has been nearly two (2) years since the commencement of this lawsuit, the Parties are still dealing with discovery issues primarily due to Defendants' uncooperative conduct. Defendants are obligated to produce the requested documents, and any confidential information shall be protected by the Joint Discovery Confidential Order. Therefore, Defendants must produce the documents/information that they have withheld, in whole or in part, from their Claim File(s) and/or similar files related to Plaintiff's claim as requested in unredacted form within **twenty-one (21) days** after entry of this Order to Plaintiff. Moreover, Defendants are **ORDERED** to reimburse Plaintiff for its reasonable out-of-pocket costs and expenses that were necessitated but for Defendants' misconduct and failure to produce; pay the reasonable hourly rates of Plaintiff's Expert Witnesses Stegall and Triechel's revision of the expert reports; and pay the reasonable and necessary attorney's fees incurred in drafting, filing, and prosecuting the four Motions to Compel (Docs. 44; 58; 90; 101).

However, Plaintiff's request (Doc. 128, at 7) for Plaintiff's Expert Witnesses Stegall and Trichel's review of Defendants' recently produced 3,500-page Claim File and GRJN file as well as its request for payment of the expedited transcript order fees for Ms. Edward's and Ms. Studler's depositions are **DENIED** because their review of the 3,500-page Claim File and ordering of Ms. Edwards's and Ms. Studler's depositions are something Plaintiff otherwise had to do or was going to do in connection with the prosecution of Plaintiff's claims. Moreover, Plaintiff's request (Doc. 128, at 7) to prohibit Defendants at trial from introducing (directly and/or indirectly) any and all testimony, documentary evidence, and/or other evidence that relies in whole or in part on any "qualitative" and/or "quantitative" underwriting assessment metric(s) and/or the like, because Plaintiffs contend that Defendants failed and refused to produce any such information to Plaintiff, is **DENIED without prejudice**. The Court does not find at this stage of litigation that it is necessary to rule on this matter yet, as the issue appears to be premature. This is because the Court retains discretion to change any rulings on evidence based on a party's objections, evidence, or arguments at trial. Therefore, Plaintiff's request to prohibit Defendants at trial from introducing testimony, documents, or other evidence that relies on any qualitative and/or quantitative underwriting assessment metrics is **DENIED without prejudice**.

In sum, Plaintiff's Fourth Emergency Motion to Compel (Doc. 101) is **GRANTED-in-PART** as to production of unredacted Claim Files and/or similar files related to Plaintiff's claim and as to request for sanctions, which includes reimbursing Plaintiff for its reasonable out-of-pocket costs necessitated but for Defendants' misconduct, payment of the reasonable hourly rates of Plaintiff's Expert Witnesses for their revision of the expert reports, and payment for reasonable and necessary attorney's fees incurred in drafting and filing of the four Motions to Compel (Docs. 44; 58; 90; 101). Plaintiff's Motion (Doc. 101), however, is **DENIED-in-PART without prejudice** as to payment of the hourly rates of and for Plaintiff's Expert Witnesses for their review of Defendants' 3,500-page Claim File and GRJN files, payment for the expedited transcript order fees for Ms. Edward's and Ms. Studler's deposition, and its request to prohibit Defendants from introducing testimony, evidence, or documents on qualitative and/or quantitative underwriting assessment metrics at this stage of litigation.

### F.  **Plaintiff's Supplemental (Fifth) Motion to Compel and for Sanctions (Doc. 114) Is GRANTED-in-PART and DENIED-in-PART**

Plaintiff filed a Fifth Motion to Compel (Doc. 114), which supplements its Emergency Motion to Compel (Doc. 101), wherein Plaintiff includes Defendants' "additional misconduct," which Plaintiff says occurred after it filed the Emergency Motion to Compel. The Court need not discuss these "additional misconducts" in detail, but in essence, Plaintiff alleges that Defendants conceded at their meet and confer on September 20, 2023, that GRJN had, in fact, engaged in "substantial non-privileged investigative work" on Plaintiff's employee dishonesty/embezzlement claim. (Doc. 114, at 3–4). Plaintiff also adds that Ms. Studler, who is Defendants' Claim Investigator, refused to answer questions at her deposition about other bond claims that she investigated with Ms. Edwards, who is Defendants' Claims Adjuster. (*Id.* at 6–7). Plaintiff contends that Ms. Studler and Defense Counsel "long knew" it had been "diligently seeking discovery of information" about Defendants' handling of other embezzlement claims; yet, Plaintiff argues, Ms. Studler refused to answer any questions regarding the other claims, even though the information is relevant to Plaintiff's bad faith claim in this litigation. (*Id.* at 7). Additionally, Plaintiff argues that Defendants did not ask Ms. Edwards, the Claims Adjuster, for a copy of her Claims Assure File Notes and that Ms. Edwards' file notes are being wrongfully withheld because there is "no legitimate excuse" for Defendants to not have requested a copy of her Claims Assure File Notes, while assuring Plaintiff that Defendants had already produced the entire Claim File. (*Id.* at 8–9).

Defendants filed a Response in Opposition (Doc. 115), arguing that they had previously withheld GRJN communications on grounds of attorney-client privilege and/or work product protection; however, they argue that "forthcoming supplemental production" will include certain communications from GRJN, which are focused on "supporting the investigation of Plaintiff's fidelity bond claim."[5] (*Id.* at 8, 10). Defendants also argue that

---

[5] Defendants also state in their Response that they were not able to produce the GRJN documents to Plaintiffs, at the time they filed the Response on November 2, 2023, because they had a trial for another case and took the time to assess these documents to "minimize the risk of document production errors." (Doc. 115, at 9). After the hearing in late

when the Parties met and conferred on September 20, 2023, Plaintiff knew Defendants' review would not be complete in advance of the depositions of Ms. Studler and Ms. Edwards, and so, the Parties had scheduled another meeting after the Studler and Edwards depositions. (*Id.* at 11). Additionally, Defendants argue that Plaintiff has sought unrelated claims files submitted by other fidelity bond customers who have "no relation" to Plaintiff. (*Id.* at 12). As to Ms. Studler's refusal to answer questions at her deposition, Defendants argue that Ms. Studler "believed that she was not permitted to disclose the information due to her governing professional rules and NDAs." (*Id.* at 15). Defendants further dispute Plaintiff's contention that they improperly withheld Ms. Studler's investigation file, arguing that Ms. Studler's own investigation file is not their Claim File. (*Id.* at 17). And as to the Claims Assure File Notes from Ms. Edwards, Defendants contend that they did not know they maintained "Notes" separately from the claim files document repository. (*Id.* at 16).

Plaintiff filed its Reply (Doc. 119), making several arguments in response to Defendants' contentions, including that the GRJN files that are being withheld are "apparently intertwine[d]" in both discoverable investigation and allegedly privileged information and that Defendants "unwisely" chose to use GRJN in such a manner. (*Id.* at 4). Plaintiff also argues that Defendants have "obfuscated and improperly withheld" the Claim File for "more than a year" and that they have made "false representations" when they stated that "all of the GRJN information" that were being withheld were "strictly" legal advice. (*Id.* at 8). Plaintiff also contends that Defendants "improperly asserted privilege to withhold Ms. Edwards's and Ms. Studler's documents (*Id.* at 10–11) and argues that Defense Counsel engaged in "numerous pointed interruptions" and in "improper 'speaking' and 'tutorial' objections'" when Plaintiff was deposing Ms. Studler. (*Id.* at 15).

As a result, Plaintiff ultimately requests the following: compel Defendants to pay Plaintiff the attorney fees for having caused it to draft and file the instant Fifth Motion to Compel (Doc. 114) and for its time spent in preparing for and participating in the various related meet and confer conferences; authorize Plaintiff to take depositions of attorneys and/or others at GRJN who participated in the investigation of Plaintiff's claim and require

---

November of 2023, however, Defendants volunteered to go through the GRJN documents again and send the ones they think are permissible to disclose to Plaintiff.

Defendants to produce all of GRJN documents, communications, and files related to Plaintiff's claim, up to but not including, Defendants' final decision as to Plaintiff's claim; authorize plaintiff to take depositions of Defendants' underwriters (Tammy Behnke and Matthew Santolla) as to the policies issued by Defendants to Plaintiff; authorize Plaintiff to re-take depositions of Ms. Studler, Ms. Edwards, Mr. Vidone, and Mr. Bednarik (a Rule 30(b)(6) Witness) and order Defendants to pay for attorney fees incurred by Plaintiff for having to re-take the depositions of Ms. Studler, Ms. Edwards, Mr. Vidone, and Mr. Bednarik. (Doc. 128, at 8–9).

 As more fully discussed *supra* when discussing Plaintiff's Fourth Emergency Motion to Compel (Doc. 101), upon review of Plaintiff's Supplemental Motion to Compel (Doc. 114) and Defendants' Response (Doc. 115), the Court is not convinced that Defendants' actions were justified, harmless, or in good faith. The GRJN materials as well as the Claim File and related materials are clearly vital to Plaintiff's case. The fact that the case commenced two (2) years ago but is still dealing with basic, straight-forward discovery requests, which mainly seem to have been caused by Defendants' bad faith, concerns the Court. Therefore, Plaintiff's Supplemental Motion to Compel and for Sanctions (Doc. 114) is **GRANTED**-**in**-**PART**. That is, Defendants are **ORDERED** to pay the reasonable attorney's fee of drafting and filing its Supplemental Motion to Compel (Doc. 114); **ORDERED** to make attorneys and/or others at GRJN who participated in the investigation of Plaintiff's claim available for deposition; **ORDERED** to produce all GRJN documents, communications, files related to Plaintiff's claim, up to but not including Defendants' final decision as to Plaintiff's claim; **ORDERED** to make Ms. Studler, Ms. Edwards, Mr. Vidone, and Mr. Bednarik available for further depositions and shall cover the costs of said depositions. However, the Court **DENIES-in-PART** Plaintiff's request to order Defendants to pay costs and fees for Plaintiff's time spent in engaging in various related meet and confer conferences with Defendants. Generally, the Court encourages meet and confers between Counsel, and despite the frustration caused by Defendants' misconduct, the Court still finds these meet and confers between Plaintiff's Counsel and Defense Counsel nevertheless benefited both Parties in some way and uncovered some important information for Plaintiff in drafting and filing the instant Motions to Compel.

## **CONCLUSION**

In sum, the Court finds, having granted relief to Plaintiff, that the conduct of Defendants is consistent with Federal Rule of Civil Procedure 37, and thus, reasonable fees and costs caused by Defendants' behaviors are due to be granted. Accordingly, the Court **ORDERS** the following:

Plaintiff's First Motion to Compel (Doc. 44) is **GRANTED**. Defendants are **ORDERED** to produce their embezzlement/employee dishonesty claims that exceeds $100,000, and were submitted to Defendants from January 1, 2013, to December 31, 2023, and where the embezzlement/employee dishonesty scheme or conduct had lasted for a year or more. Defendants are **ORDERED** to make these productions to Plaintiff within **twenty-one (21) days** of entry of this Order.

Plaintiff's Second Motion to Compel (Doc. 58) is **GRANTED**. Defendants are **ORDERED** to produce all documents that were withheld and redacted, in their unredacted form, along with Defendants' brief, concise explanation of their objection to production to said documents, to the Court for an in *camera* review so that the Court can determine whether Defendants met their burden of proving privilege(s) to those documents. If the Court finds that Defendants failed to establish a *bona fide* privilege or finds that privilege(s) have been waived, the Court shall then enter a separate Order, instructing Defendants to produce those documents to Plaintiff. Defendants are **ORDERED** to produce those documents and materials to the Court, in their unredacted form (bates stamped/numbered), for an *in camera* review within **twenty-one (21) days** after entry of this Order.

Plaintiff's Third Motion to Compel (Doc. 90) is also **GRANTED**. Defendants are **ORDERED** to produce the complete set of unredacted board minutes from January 1, 2018, to December 31, 2021, which have not yet been produced to Plaintiff. As noted *supra*, if no additional meeting was held, an authorized member of each respective Board shall affirmatively so state, in writing certifying the completeness and truthfulness of the statement, and be submitted to the Court and Plaintiff as its response.

Plaintiff's Fourth Emergency Motion to Compel and for Sanctions (Doc. 101) is **GRANTED-in-PART** and **DENIED-in-PART**. Defendants are **ORDERED** to produce all documents and/or information that they have withheld (in whole or in part) from their

Claim File(s) and/or similar files related to Plaintiff's claim as requested in unredacted form within **twenty-one (21) days** after entry of this Order; **ORDERED** to pay the regular hourly rates of Plaintiff's Expert Witnesses Stegall and Triechel for their revision of the expert reports; **ORDERED** to pay the reasonable attorney's fees necessary in drafting and filing the Motions to Compel (Docs. 44; 58; 90; 101). Again, Defendants are **ORDERED** to produce these documents to Plaintiff within **twenty-one (21) days** of entry of this Order, and for deposition fees when noticed.  However, Plaintiff's request for payment of costs and the regular hourly rates of Plaintiff's Expert Witnesses Stegall and Triechel for their review of Defendants' 3,500-page document, request for payment of the expedited transcript order fees for Ms. Edward's and Ms. Studler's depositions are **DENIED**; and Plaintiff's request to prohibit Defendants from introducing testimony, documentary evidence, and/or other evidence that relies in qualitative or quantitative underwriting assessment metric(s)and/or the like is **DENIED without prejudice**.

Lastly, Plaintiff's Supplemental Motion to Compel and for Sanctions (Doc. 114) is **GRANTED-in-PART** and **DENIED-in-PART**. Defendants are **ORDERED** to pay the reasonable attorney fees of Plaintiff's drafting and filing of the Fifth or Supplemental Motion to Compel and for Sanctions (Doc. 114); **ORDERED** to make attorneys and/or others at GRJN who participated in the investigation of Plaintiff's claim available for deposition; **ORDERED** to produce all GRJN documents, communications, files related to Plaintiff's claim, up to but not including Defendants' final decision on Plaintiff's claim; **ORDERED** to make Ms. Studler, Ms. Edwards, Mr. Vidone, and Mr. Bednarik available for further depositions and shall cover the costs of said depositions. However, the Court **DENIES-in-PART** Plaintiff's request to order Defendants to pay costs and fees that Plaintiff spent in engaging in various meet and confer conferences with Defendants.

Accordingly, Plaintiff is **ORDERED** to submit a brief containing its request for reasonable costs and attorney's fees, with documentation that supports Plaintiff's request, **no later than twenty-one (21) days** after entry of this Order, so that the Court can determine the reasonableness of the fees and expenses Plaintiff seeks from Defendants. Then, Defendants may file a response or objection to the amount of fees and costs sought by Plaintiff, with documentation that supports their opposition, within **twenty-one (21) days**

thereafter. Following that, Plaintiff may file a reply to Defendants' response no later than **seven (7) days** thereafter. Thereafter, the Court shall continue and extend the discovery of the above-styled matter by a separate Order.[6]

      **SO ORDERED**, this <u>29th</u> day of March 2024.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] The Court notes that although multiple Motions to Compel (Docs. 44, 58, 90, 101, 114) were filed and most of the reliefs sought in these Motions have been granted in the instant Order, the Court finds that these Motions are all essentially related and concern the same conduct or issue in question, often when the issue had already been previously raised and were pending resolution by the Court. Accordingly, going forward, Plaintiff's Counsel should, if possible, avoid filing duplicative motions that involve the same or common issues for the Court's review for purposes of efficiency and effectiveness.