IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| SOUTHERN PINE CREDIT UNION, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 7:22-CV-00052 (WLS) |
| SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY, COACTION GLOBAL, INC., f/k/a PROSIGHT GLOBAL, INC., and PROSIGHT SPECIALTY INSURANCE INC., | : |
| Defendants. | : |

**ORDER**

Previously, the Court ordered, at Plaintiff's request, an *in camera* review of withheld or redacted discovery materials for the purpose of determining whether Defendants have met their burden of proving asserted privileges with respect to those materials. (*See* Doc. 129 at 11). On April 14, 2025, the Parties filed a Joint Status Report (Doc. 140) notifying the Court that, among other things, the Parties have agreed to participate in a third-party mediation on May 12, 2025.

In light of the Parties' upcoming mediation, the Court has completed its review of the disputed materials and issues this Order setting forth its findings as to the discoverability of said materials. The Court has attempted to strike a balance between providing as much analysis as reasonably possible while at the same time efficiently accomplishing the review and rendering its ruling to facilitate the anticipated mediation.[1]

I. **LAW AND ANALYSIS**

Defendants generally assert two privileges: attorney-client privilege and the work product doctrine. The Court addresses each privilege in turn.

---

[1] The factual and procedural background of this case is quite extensive and complex and is explained in great depth in the Court's previous Orders. (*See* Docs. 60, 95, & 129). As such, the Court does not recount that background here.

1

### A. Attorney Client Privilege

The scope of discovery is broad. Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Because this is a diversity case, Georgia law governs issues related to attorney client privilege. *See GAB Bus. Serv., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir.1987) (holding that "state law determines privilege when state law supplies rule of decision"); *Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 691 (N.D. Ga. 2012) ("Whether documents are protected by the attorney-client privilege is a substantive issue governed by state law."). "Under Georgia law, the [attorney-client] privilege protects confidential communications between attorney and client." *HDI Glob. Specialty SE v. PF Holdings, LLC*, No. 4:20-CV-103, 2021 WL 1931489, at *2 (M.D. Ga. May 13, 2021). The privilege "attaches where (1) there is an attorney-client relationship; (2) the communications in question relate to the matters on which legal advice was sought; (3) the communications have been maintained in confidence; and (4) no exceptions to privilege are applicable." *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 746 S.E.2d 98, 104 (Ga. 2013)). The party claiming the privilege bears the burden of proving these requirements. *See United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1328 (N.D. Ga. 2015) (citing *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)).

Further, "the privilege does not simply follow an attorney by virtue of his profession." *S. Guar. Ins. Co. of Ga. v. Ash*, 383 S.E.2d 579, 583 (Ga. Ct. App. 1989). Instead, it is narrowly construed and applies only to confidential communications made for the primary purpose of securing legal advice. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga. 2014). The privilege does not attach for "investigations, communications, and the like that are 'of a nature that the business would ordinarily have conducted in all events[.]'" *United States ex rel. Bibby*, 165 F. Supp. 3d at 1329; *see Davita*, 301 F.R.D. at 682 (quoting *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3rd Cir. 2007) ("Where a lawyer provides non-legal business advice, the communication is not privileged.")).

Here, Plaintiff claims that many of the disputed documents are not protected by the attorney-client privilege because the outside law firm Gregerson, Rosow, Johnson & Nilan, Ltd. ("GRJN") was hired by Defendants in a "dual role" which included both "participating

2

in an impartial factual investigation into the bond claim submitted [] by Plaintiff" as well as providing legal advice to Defendants prior to any litigation. (Doc. 58-5 at 1–2). Defendants concede that GRJN operated in "dual role[s]" in an email sent to Plaintiff's counsel in which Defendants' counsel noted that "[Defendants] and GRJN are aware of the distinction between legal work and claims handling processes/business activities, and as a result [Defendants] made every effort to limit [the] withholding of documents to those in which GRJN was engaged in legal services only." (Doc. 58-2 at 2).

Based upon the Parties' representations as well as the Court's own review of the documents, the Court agrees that GRJN was, at least in some regard, hired as a vendor to carry out the normal business function related to the investigation of Plaintiff's pending insurance claim. For instance, GRJN attorneys drafted preliminary coverage letters and final declination letters which were ultimately sent to Plaintiff and directed the focus of the investigation and coverage review through various memoranda and other communications with Defendants. For these reasons, and based upon the Court's own independent review of the *in camera* materials, the Court finds that Defendants have not met their burden of proving the existence of the attorney-client privilege with respect to the following: Exhibits 1, 5, 7–15, 21, 23–32, 35–66, 94, 101–102, and 104.

Defendants are therefore **ORDERED** to produce, in their full and unredacted form, the documents contained in the enumerated exhibits described above **within twenty-one (21) days** of the entry of this Order, or **by no later than Friday, May 30, 2025**.

### B. Work Product

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[2] Fed. R. Civ. P. 26(b)(3)(A)(ii). The Rule, however, instructs that even where

---

[2] "Unlike the attorney-client privilege, the scope of protection provided by the work product doctrine is a procedural question and thus governed by federal as opposed to state law in a diversity action." *Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 694 (N.D. Ga. 2012) (citing *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. 2008)).

substantial need is shown, courts must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B).

The crux of the issue here is whether the documents Defendants claim are protected by the work product doctrine were actually prepared in anticipation of litigation. "Whether a document was prepared 'in anticipation of litigation' depends upon whether the document 'can fairly be said to have been prepared or obtained because of the prospect of litigation, . . . (and not) in the regular course of business.'" *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. 2008) (quoting *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D. Ga. 1982)). Other courts dealing with insurance cases like this one have generally concluded that "claim files generally do not constitute work product in the early stages of investigation," at a time when "the insurance company is primarily concerned with 'deciding whether to resist the claim, to reimburse the insured and seek subrogation . . . or to reimburse the insured and forget about the claim thereafter.'" *Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 694 (N.D. Ga. 2012) (quoting *Underwriters*, 248 F.R.D. at 667). Once litigation becomes the imminent, the claims investigation file may then be maintained "in anticipation of litigation" and its contents are protected by the work product doctrine. *Underwriters*, 248 F.R.D. at 667. Many courts consider the time of the denial of the insurance claim to be the point at which litigation becomes imminent. *See Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115 (N.D. Ga. 1972) (holding that investigation reports made before the denial of claim by insurance company were not prepared in anticipation of litigation and were therefore discoverable).

Defendants formally denied Plaintiff's claim in a letter dated September 14, 2021. (*See* Doc. 89 ¶ 71). All documents and communications created before that date were clearly prepared to assist Defendants' decision regarding coverage in Plaintiff's pending bond claim. For these reasons, and based upon the Court's own independent review of the *in camera* materials, the Court finds that Defendants have not met their burden of proving that the following exhibits were created in anticipation of litigation so as to invoke the protection of the work product doctrine: Exhibits 2–16, 21–23, 26, 30–32, 35–42, 46, 48, 50, 51–66, and 106.

4

Defendants are therefore **ORDERED** to produce, in their full and unredacted form, the documents contained in the enumerated exhibits described above **within twenty-one (21) days** of the entry of this Order, or **by no later than Friday, May 30, 2025**.[3]

## CONCLUSION

For the reasons discussed herein, Defendants are **ORDERED** to produce the documents identified in the exhibit numbers set out above in their full and unredacted form **within twenty-one (21) days** of the entry of this Order, or **by no later than Friday, May 30, 2025**. The remaining exhibits not mentioned above have either been provided to Plaintiff with redactions or withheld entirely. The Court finds such withholding or redaction to be proper and without need of further review or order of the Court.

**SO ORDERED**, this 9th day of May 2025.

                                                 **/s/ W. Louis Sands**
                                                 **W. LOUIS SANDS, SR. JUDGE**
                                                 **UNITED STATES DISTRICT COURT**

---

[3] The Court notes that even if it were to find that the above documents were prepared in anticipation of litigation, said materials would still be discoverable based upon (1) Plaintiff's substantial need for the materials in proving its bad faith claim, and (2) Plaintiff's inability to obtain these materials by other means without undue hardship. *See Underwriters*, 248 F.R.D. at 669 (finding that a plaintiff's need for the information in an insurance company's claim file is substantial because the documents in the file are often the only reliable indication of whether the insurance company acted in bad faith).